SMITH
*vs.*
STONE.

Case 21.

ORD. PET.

## Smith *vs.* Stone.

### APPEAL FROM JEFFERSON CIRCUIT.

An obligor who is principal in a note encourages an assignee to purchase his note, by assuring him that it is all right and will be paid at maturity, cannot afterwards avoid its payment to the assignee by relying upon a failure of consideration.

[The facts of the case are stated in the opinion of the court.—REP.]

*W. T. Haggin* and *H. F. Smith* for appellant—

The evidence clearly shows a failure of consideration of the note sued on. And that the maker of the note, when it was delivered, was ignorant of such failure, though he made it payable at a future day, that he might inform himself of the facts, yet from the testimony of his witness it was out of abundant caution, not from any reasonable apprehension that all was not right, for witness Smith had confidence in McCoy, the payee.

If the maker of a note may be allowed to set up a defense which was unknown to him at the date of the note, surely he should be allowed to assert it against a subsequent verbal promise, made in good faith, to pay the note. That the former can be done is decided. (*Clay vs. McClanahan*, 5 *B. Monroe*, 241; *Pyle vs. Shannon, Hard.* 53.) Smith did not induce the assignee to buy the note; he only remarked, when appealed to shortly after the execution of the note, that he would pay it at maturity. The face of the note said this much; he said no more. He then

had no reason to suspect the fraud practiced on him. If a party knowing of the existence of a specific equity against the payment of a debt, by failing to mention it waive the right to assert it against an assignee, yet he is not precluded from asserting another equity that was unknown to him at the time. (*Clay vs. McClanahan, supra; Honore vs. Dougherty,* 4 *Bibb,* 280.) It is not pretended that Smith had any knowledge of the equity here asserted. He was ignorant whether all was right or not, and wished to be fully informed before paying. What was said to the assignee could not have mislead him; it was barely an assurance of the genuineness of the signature of the note, negotiable on its face.

The cases where the maker has been precluded from a defense against a note in the hands of the assignee, are cases where he has been active in inducing the purchase of the note; not where he has been merely passive.

So long as McCoy held the note, Smith had a valid defense against it. He has done no act which has cut off that right of defense. He never requested or encouraged the assignee to buy it; never waived his right of defense; received no benefit by forbearance.

*Barret & Wood* for appellee—

The suit was instituted in the Jefferson circuit court by Stone, as assignee of McCoy, on a note executed by appellant Smith to McCoy, and by McCoy assigned to Stone.

Smith pleads a *failure of consideration,* and attempts to show by witness Atchison that the note was executed for McCoy's interest in certain land warrants by the government of the state of Texas to Smith & McCoy, which were afterwards annulled and vacated by that government. This is Smith's defense.

Stone relies on the fact that he was induced to trade for and take the note from McCoy on the representations of Smith that it was all right, and would

SMITH
vs.
STONE.

be paid at maturity. The witness for Stone, Mr. McConathy, states that he was acting as agent for Stone, at his warehouse in the city of Louisville, in the sale of carriages and buggies. That McCoy applied at the house to purchase a buggy from Stone; offered to pay same with the note on Smith; that he, witness, before the trade was consummated, went with the note to Smith, told him of the proffered trade, and asked if Stone would be safe in trading for the note, when Smith told witness that the note was all right, and would be paid at maturity. Upon this recommendation and assurance Stone purchased the note. On this state of facts we contend that Smith is estopped from relying on his plea. He waived any equity he had against the note so far as Stone is concerned, by inducing him to purchase; and he should be compelled to pay the note. We refer the court to the cases of *Barnes, &c. vs West*, 3 *Monroe, page* 169; *Morrison's adm'r. vs. Beckwith*, 4 *Monroe*, 73. And many other cases might be cited. The point is so clear, in our judgment, we are not disposed to trouble the court.

It will be perceived that the record before the court does not purport to contain *all the evidence* adduced on the trial in the court below. From this cause alone we presume the appeal will be dismissed. Otherwise, however, we ask an affirmance of the judgment below.

September 27.     Judge SIMPSON delivered the opinion of the court:

The only question presented in this case is, whether the maker of a note, who induced the arsignee thereof to purchase it, by stating, in answer to an inquiry on the subject made by his agent before the assignment, that the note was all right, and would be paid at maturity, shall, in an action thereon by the assignee, be permitted to set up and rely upon the failure of the consideration upon which the note was executed, if he were ignorant of such failure at the time of the assignment.

It appears that the assignor of the note offered it to the assignee for a buggy and harness that belonged to the latter; that the maker of the note was informed of the proposition, and inquired of in relation to the debt; that in answer to that inquiry he made the foregoing response—that the note was all right and would be paid at maturity; and thereupon the proposition was accepted, and the sale made.

An obligor who is principal in a note encourages an assignee to purchase his note, by assuring him that it is all right and will be paid at maturity, can not afterwards avoid its payment to the assignee by relying upon a failure of consideration.

It is evident, therefore, that the assignee of the note parted with his property on the faith of the representation made to his agent by the obligor in the note. He had a right to rely upon that representation, as it was made by the person who was most interested in the matter, and who must have been acquainted with the origin of the debt, and the consideration upon which it was founded. If the maker of the note did not then know the condition of the property for which the note was executed, he should have so stated, and not have misled the assignee by an unqualified statement of the goodness of the debt. His ignorance of the fact that the consideration had failed will not relieve him from the attitude he has placed himself in. His want of information on the subject would have furnished him with a good reason for expressing a doubt as to the validity of the note, but certainly it did not justify him in stating, as he did, that the debt was good and would be punctually paid. As between him and the assignee, every principle of justice requires that the loss, if there be one, shall devolve upon him, and not upon the assignee. He has by his conduct extinguished that equity against the payment of the note, which might otherwise have followed it into the hands of the assignee. By inducing an innocent assignee to part with his property in the purchase of a note, the maker thereof, so far as the assignee is concerned, waives every equity, unknown as well as known, that he has against its payment.

The case of *Clay vs. McClanahan*, 5 *B. Monroe*, 242, decides no principle inconsistent with this doctrine.

There the promises of payment were made after the assignment, and all the reasoning of the court is directed to that state of case, and has no application to a case where the promises or representations are made previous to the assignment.

Nor does the decision in the case of *Honore vs. Dougherty, &c.* 4 *Bibb*, 280, conflict in any respect with the principles of this opinion. The decision in that case was, that the surety in a note, to whom the assignee thereof applied for information before he took the assignment, did not deprive himself of the right to rely upon any equitable defense, afterwards set up by the principal, by the information he gave to the assignee, that the note was good. The person applied to for information was only the surety in the note, and that fact appeared on the face of the note itself. He could not, by his conduct, deprive his principal of the right to set up any defense he might have against the payment of the note. The assignee should have applied to the principal, and not to the surety, for information on the subject. He had no right to purchase the note upon the faith of representations made by a person who was merely a surety, and who might not have known even the consideration upon which the note was executed. The reasons given by the court for the decision in that case have no application to a case like the present.

The conclusion at which we have arrived in this case is in exact conformity with numerous decisions of the same question, in which, however, no attempt seems to have been made to discriminate between those cases where the equity attempted to be relied upon by the maker of the note was unknown to him at the time he induced the assignee to take the assignment, and those in which it was known to him. We think, however, there is no foundation for any such distinction, and that both cases must be considered as placed upon the same footing.

Wherefore, the judgment is affirmed.